UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

LIBERTY MEDIA HOLDINGS, LLC,

Plaintiff,

v.

RYAN FRAGA,  Civil Action No. 11-cv-11789-WGY

Defendant.



### DEFENDANTS REPLY TO PLAINTIFFS OPPOSITION TO MOTION TO DISMISS

Defendant, Ryan Fraga, proceeding pro se, files this reply to Plaintiff's Opposition to Defendant's Motion to Dismiss.

Before replying to Plaintiff's opposition, Defendant would like to bring two issues to the courts attention.

First, Defendant filed exhibits with the court on Feb 6th that were inadvertently not included with the Motion to Dismiss. Notice was mailed to Defendant stating that Attorney Silverstein received the exhibits via ECF around 9:30am on Feb. 8th. Plaintiff's opposition was filed after 6pm on Feb 9th. Plaintiff incorrectly states that no exhibits were provided, and any argument based on these allegations should be ignored. To date, Liberty has not filed any correction to their Motion. Although Defendant believes sanctions would be justifiable, defendant will not ask the court to consider them at this time.

Second, Plaintiff spends a great deal of their opposition responding to defenses that were briefly mentioned in two sentences at the end of Defendant's Motion to Dismiss (regarding,

amongst other defenses, that the film is obscene and statutory damages are not available due to Plaintiff's recovery to date from other Defendant's who are jointly and severally liable). These clearly were not argued at all in the Motion to Dismiss, and were briefly mentioned as future defenses if the Motion was not granted. In the present opposition, Plaintiff claims "Defendant's line of argument regarding the obscenity of Liberty's works is a misdirection" and spends 3 paragraphs arguing that Obscene films can be copyrighted. Defendant did not have any line of argument- the only mention of obscenity was Defendant's intention to raise the issue of "Copyright Protection not being available due to the film's lack of originality and obscene content." This misstatement of facts is unsurprising, given Plaintiff's unfounded allegation that Defendant admitted to downloading the film in question. Several more paragraphs are spent arguing the issue of joint and several liability which again, was mentioned once by Defendant and not discussed. No response will be filed regarding the issue of joint and several liability since Defendant did not intend for the issue to be argued at the juncture in the proceedings(If the court would like a response, Defendant respectfully requests that the court direct him to do so)..

Defendant's Motion to Dismiss was based on the fact that the Motion Picture was registered under an incorrect title and would not have been registered had the Copyright Office been aware of this. Since registration was not made in compliance with 17 U.S.C 409, 17 U.S.C. 411, and the accompanying regulations, it undermines Congress' intent in compiling a robust national register of copyrighted works and must be held invalid. Accordingly, Plaintiff cannot maintain any causes of action for Copyright Infringement based on this invalid registration.

## LEGISLATIVE HISTORY AND PLAINTIFF'S INVALID REGISTRATION

The legislative history of the Copyright Act of 1976 establishes that the creation of a public record of copyrights, which would require the actual names of the registrants and titles of works, was one of Congress's express goals. See H.R. Rep. 94-1476, 1976 U.S.C.C.A.N. 5659, 5771-72 ("[T]he various clauses of section 409, which specify the information to be included in an application for copyright registration, are intended to give the Register of Copyrights authority to elicit all of the information needed to examine the application and to make a meaningful record of registration.")

This goal was reiterated during a debate on the possible repeal of sections 411 and 412 In the 1980s, when Congressman Kastenmeier stated the case for the registration incentive system:

> The objective of maintaining the flow of materials to the collections of the National Library through registration, the evidentiary use to the judicial system, the usefulness of the examining process, and the public interest of a **comprehensive and open registry relating to the existence, ownership and exercise of copyrights all argue for continuation of this registration incentive.**
> The Berne Convention: Hearings on S. 1301 and S. 1971 Before the Subcommittee. on Patents, Copyrights & Trademarks of the S. Comm. on the Judiciary, 100th Cong. 55 (1988) (statement of Congressman Robert W. Kastenmeier) (emphasis added).

A September 1993 study by the Advisory Committee on Copyright Registration "ACCORD" of the Library of Congress regarding the possible repeal of sections 411 and 412 of

the Copyright act listed various arguments both for and against repeal. Highlighting arguments for retention of Section 412, the report stated:

> b) Section 412 is fulfilling the purpose for which it was intended as a powerful working inducement to registration and deposit, which are in large part responsible for the Library's collections and copyright databases. It has proven its reasonableness and legitimacy as part of the American copyright system.
>
> ....
>
> d) The acts of 1976 and 1988 have transformed the American copyright system into one virtually free of formalities, with the result that the number of works now protected by statutory copyright is virtually incalculable. However, **without notice and registration, it is difficult if not impossible for publishers, historians, biographers, journalists, and other authors and users to determine basic copyright facts about a work.** The function of section 412 in our copyright system has thus achieved a new dimension. **By inducing registration it provides scholarly users and other authors and publishers with essential information not otherwise available; and, by withholding statutory damages and attorney's fees for unregistered works, it shields these users from some of the risks of litigation.**

The Copyright Office recognizes and embraces Congress's intent that the Office create and maintain an accurate record:

> The copyright law requires the Register of Copyrights to create, maintain, and index records of all deposits, registrations, recordations, and other copyright related matters and to make these records available to the public.
>
> U.S. Copyright Office, Annual Report of the Register of Copyrights, available online

at http://www.copyright.gov/reports/annual/2007/ar2007.pdf). The Copyright Office maintains an online database at http://cocatalog.loc.gov/ for post-1977 registrations, searchable by title and/or name (of author).

The Copyright Office requires Motion Pictures to be filed using Copyright Form PA. The first page(Exhibit C) contains basic information, followed by line by line instructions for filling out the application. In a large box appears the following:

> **PRIVACY ACT ADVISORY STATEMENT Required by the Privacy Act of 1974 (P.L. 93-579)**
> The authority for requesting this information is title 17 U.S.C. §409 and §410. Furnishing the requested information is voluntary. But if the information is not furnished, it may be necessary to delay or refuse registration and you may not be entitled to certain relief, remedies, and benefits provided in chapters 4 and 5 of title 17 U.S.C.
> The principal uses of the requested information are the establishment and maintenance of a public record and the examination of the application for compliance with the registration requirements of the copyright code.
> Other routine uses include public inspection and copying, preparation of public indexes, preparation of public catalogs of copyright registrations, and preparation of search reports upon request.
> NOTE: No other advisory statement will be given in connection with this application. Please keep this statement and refer to it if we communicate with you regarding this application.

The first section of the instructions states:

**Space 1: Title**

**Title of This Work:** Every work submitted for copyright registration must be given a title to identify that particular work. If the copies or phonorecords of the work bear a title (or an identifying phrase that could serve as a title), transcribe that wording *completely* and *exactly* on the application. Indexing of the registration and future identification of the work will depend on the information you give here.(italics appear in original)

17 U.S.C. 408 states that "the owner of copyright or of any exclusive right in the work

may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee specified by sections 409 and 708. "The application for copyright registration shall be made on a form prescribed by the Register of Copyrights"(17 U.S.C. 409). Section 409(6) unequivocally requires registrants to set forth the exact title of the work being registered, as well as any other titles by which it may be identified.

37 C.F.R. 202.3(c)(2) states "An application for copyright registration shall be submitted on the appropriate form prescribed by the Register of Copyrights under paragraph (b) of this section, and shall be accompanied by the appropriate filing fee, as required in § 201.3(c), and the deposit required under 17 U.S.C. 408 and § 202.20 of these regulations. The application **shall contain the information required by the form and its accompanying instructions**, and shall include a certification." (emphasis added)

The motion picture in question cannot be found by doing a basic Title search of "Down on the Farm" despite that being the only title listed on the DVD itself(exhibits A1 and A2). An author/name search for the pseudonym "Corbin Fisher" yields no results. Using any title other than "Down on the Farm" would run afoul of the purpose of Section 412 and the express requirement of Section 409(6). Congress' intent was to induce registration of copyrights to make a comprehensive record that could be easily searched by the public. Indeed, the 9th Circuit pointed out that the "central purpose of registration" is to compile "a robust national register of existing copyrights." Cosmetic Ideas, Inc. v. IAC/InteractiveCorp (9th Cir. Cal., 2010)

Liberty's argument that the incorrect Title of the Work is immaterial is completely without merit. The Title on the registration adds five words to the beginning of the Title. The Copyright Search website instructs users who are searching by Title to "Type the entire title, or the first few words of the title, starting with the first word." If Liberty felt the need to include the Title

"Corbin Fisher Amateur College Men Down on the Farm" on the application, it could have done so under the section for "Previous or Alternative Titles." The Act and federal regulations require the instructions on the application to be followed, and accordingly the application "<u>must</u> be given a title to identify that particular work" and if the work bears a title it must be entered into the application "<u>completely and exactly</u>". "Failure to comply with statutorily mandated application procedures will invalidate the registration." (Fernando Torres-Negron v J & N Records, LLC, 504 F.3d 151 (1st Cir. 2007) "Where the registration was approved because the Copyright Office believed that it had accurate information, but the information contained in the application was, in reality, untrue, the plaintiff was put in a position legally equivalent to someone who had never submitted a complete application for copyright registration.(Torres-Negron citing Whimsicality, Inc. v. Rubie's Costume Co., 891 F.2d 452, 456 (2d Cir. 1989))

 Section 411(b)(1) cannot save Plaintiff's defective registration since Liberty knew that the information on the application was inaccurate and had the Copyright Office been aware of this, the work would not have been registered. The application instructions are clear, the title is material and the requirements were not followed. The purpose of Section 411(b) was to codify a developing judicial doctrine that prevented a defendant from claiming invalidity of a registration or fraud on the Copyright Office due to innocent mistakes in the application for registration. See H.R. Rep. 110-617 (2008), at 29 (stating that "checking the wrong box on the registration form" is the type of inaccuracy Section 411(b) was designed to address). The example provided in the Congressional record, checking a wrong box, is the type of technical mistake contemplated by Section 411(b). Changing the item that would normally be used to search the catalog(the Title), is not. Pursuant to 37 C.F.R. 201.7(3)(c)(4)(v), the registration is subject to cancellation because the "application and copy(s) or phonorecord(s) do not match each other." The copyrightability of a

work doesn't foreclose the Copyright Office from cancelling a registration. The office will cancel a registration for something as simple as a check being returned for insufficient funds, and will will do so immediately and, then inform the copyright holder after the fact and instruct them to return the copyright certificate. 37 C.F.R. 201.7(c)(2)

    Liberty's footnote on page 6 claims that the variance in title is due to the series name being included. This statement is a stretch being that the content in Down on the Farm is not from the Corbin Fisher Amateur College Men website. As stated on the www.shopcorbinfisher.com website, the content in "Down on the Farm" is "all-new and [has] never before been released!" A review of the Amateur College Men website reveals that the scenes from Down on the Farm are not included on that website. Liberty sells compilation DVD's with scenes from the Amateur College Men website and both the DVD and copyright registrations list "Corbin Fisher's Amateur College Men" at the beginning of the title(Exhibits D1-D3). Liberty's other DVD's with content that is not on the Amateur College Men website do not include "Corbin Fisher Amateur College Men" on either the DVD or the copyright registration(E1-E2). Liberty own's several websites including www.corbinfisher.com/ACSCampusTour.aspx "Amateur College Sex," www.corbinfisher.com/ACMCampusTour.aspx "Amateur College Men," and www.cfselect.com "CF Select." Out of those three websites, it appears that the motion picture "Down on the Farm" is only available through the CF Select website(Exhibit F).

    Allowing a work to be registered under a single title which varies drastically from the title on the work itself would completely <u>undermine the public record function of registration</u>. Often times the Title of a motion picture is the only information known about the work, and this alone makes it essential to register the work with the appropriate title. Given the rewards

involved with timely registration (which Plaintiff has reaped the benefits of in the form of consent judgments against 3 defendants totaling $60,000, along with numerous confidential settlements), using an alternate title that is not used anywhere except the registration is pointless, knowing, and inexcusable.

Plaintiff has filed over 20 lawsuits involving this Motion Picture dating back to April of this year. Plaintiff has had ample time to follow the Copyright Office's procedure for filing a supplementary or new registration and apparently has chosen not to do so. Liberty has employed various Intellectual Property attorneys to represent them across the country and they have knowledge of the cases that they file. In filing the court complaints, Liberty's attorneys would have reviewed the certificate of registration that was attached to the complaint. Adding five words to a title listed on the application that don't appear on the DVD simply makes no sense. This is not a case of simple misspelling or the addition of "a," "an," or "the" to the Title. This is a case of total disregard for the simple instructions on the application as well as the legal requirements of the Copyright Act. Filing a supplemental or new registration correcting this error after these lawsuits commenced had the potential to deprive Plaintiff of the ability to seek statutory damages and attorney's fees. This, in turn, would obviously cause these mass copyright lawsuits to be less lucrative which apparently took precedent over doing the right thing and correcting the registration. Accordingly, any claim of this being an inadvertent error cannot stand.

Plaintiff's registration of "Down on the Farm" is invalid and without such registration, Plaintiff cannot bring a "civil action for infringement of [a] copyright[.]" 17 U.S.C. § 411(a). Accordingly, Defendant respectfully requests that this honorable court dismiss this matter. Defendant also respectfully requests that the claims for statutory damages and attorney's fees be

dismissed with prejudice since Plaintiff was negligent and failed to correctly register the motion picture within the time required by the statute.

                                                Respectfully Submitted,

*/s/ Ryan Fraga*
Ryan Fraga

FEBRUARY 17, 2012