# PATENT, TRADEMARK & COPYRIGHT

## JOURNAL

Reproduced with permission from BNA's Patent, Trademark & Copyright Journal, 78 PTCJ 391, 7/24/09, 07/24/2009. Copyright © 2009 by The Bureau of National Affairs, Inc. (800-372-1033) http://www.bna.com

### COPYRIGHTS

Understanding the Copyright Act's limitations and restrictions on the availability of statutory damages is key to the successful prosecution or defense of copyright litigation.

## Statutory Damages in Copyright Litigation: Clearing Up Some Common Misunderstandings

By Andrew Berger

Statutory damages, although a potent weapon in copyright litigation, are often a trap for the unwary.[1] The Copyright Act of 1976 imposes limitations on the availability of statutory damages, the number of grants of statutory damages to be awarded and the parties against whom those grants will be individually assessed.[2] The act also impacts on the availability of actual damages when the copyright owner elects statutory damages before the entry of final judgment.[3]

Litigants on both side of the fence sometimes misunderstand these limitations. Copyright owners mistakenly seek statutory damages for post-registration infringements of a work that continue the pattern of pre-registration infringement of the same work.[4] Where

---

©Andrew Berger. Berger is a copyright lawyer with Tannenbaum Helpern Syracuse & Hirschtritt, New York. He is also a co-chairman of the Copyright Subcommittee of the Intellectual Property Committee of the Litigation Section of the American Bar Association.

[1] See *Lowry's Reports Inc. v. Legg Mason Inc.*, 302 F. Supp. 2d 455, 69 USPQ2d 1837 (D. Md. 2004) (67 PTCJ 343, 2/20/04) (Jury award of statutory damages of $19.7 million); *Columbia Pictures Television Inc. v. Krypton Broadcasting Inc.*, 259 F.3d 1186, 1189, 59 USPQ2d 1321 (9th Cir. 2001) (62 PTCJ 249, 7/20/01) (Statutory damages award of more than $31 million).

[2] 17 U.S.C. § 412(2) limits the availability of statutory damages. This section requires registration of the work before it is infringed or within three months after its initial publication. 17 U.S.C. § 504 (c)(1) provides for one grant of statutory damages where multiple infringers acting in concert infringe one work multiple times. That last sentence of this section also provides for one grant of statutory damages where a plaintiff-created compilation or derivative work is infringed by defendant.

[3] Courts construing 17 U.S.C. § 504 (c)(1) hold that, once plaintiff elects to receive statutory damages at any time before the entry of final judgment, all appellate issues regarding actual damages are mooted. See, e.g., *Jordan v. Time Inc.*, 111 F.3d 102, 104, 42 USPQ2d 1570 (11th Cir. 1997).

[4] See, e.g., *Silverman v. Innovative Luggage Inc.*, 67 USPQ2d 1489 (S.D.N.Y. 2003) ("[A]s long as infringement commenced *before* the date of registration, statutory damages ... are barred even if infringement continued *after* the date of registration.") (emphasis in original); *Fournier v. Erickson*,

Further, defendants sometimes incorrectly assert that the unauthorized infringing compilations they create from plaintiff's separate, copyrightable works are subject to only one award of statutory damages.[6] Finally, copyright owners who elect to receive an award of statutory damages mistakenly believe they can still raise issues on appeal regarding actual damages.[7]

This article attempts to clear up these misunderstanding to enable all parties to appropriately assess their exposure to statutory damages in copyright litigation.

## No Entitlement to Statutory Damages for the Continuation of Post-Registration Infringing Conduct That Commenced Pre-Registration

Section 412(2), with one exception not relevant here, prohibits recovery of statutory damages for infringements of a work that commence before the work is registered. But this section is silent whether a copyright owner may recover statutory damages for infringements of that work that continue after registration.

Courts usually say no. The majority hold that the copyright owner is not entitled to statutory damages for the continuation of post-registration infringements that commenced pre-registration.[9] Copyright owners who attempt to avoid this result argue that the post-registration infringements are new, different and separate and thus are wholly divorced from the pattern of pre-registration infringements of the same work.

This argument usually fails. Courts interpret the words "infringement . . . commenced after the first pub-

ages for any post-registration infringements of a work by a defendant "if the same defendant commenced an infringement of the same work prior to registration."[12]

*Mason* relied on the legislative history of Section 412 which revealed "Congress' intent that statutory damages be denied not only for *the particular infringement* that a defendant commenced before registration, but for all of that defendant's infringements of a work if one of those infringement commenced prior to registration."[13] *Mason* stated that the purpose of Section 412 was to encourage early registration and that "'[t]he threat of such a denial [of statutory damages] would hardly provide a significant motivation to register early if the owner of the work could obtain those remedies for acts of infringement taking place after a belated registration.'"[14]

Since *Mason*, courts bar statutory damages for post-registration infringements even if they differ from the infringements pre-registration. See *Shady Records Inc. v. Source Enterprises Inc.*, "[t]he clear rule announced in *Mason* which is easily applied to preclude statutory damages . . . where any infringement occurs before the effective date of the work's copyright registration is preferable."[15] See also *Whelan Associates Inc. v. Jaslow Dental Laboratory Inc.* holding that post-registration infringing software that was "different" because it contained "improvements" was found to be part of a "series of infringements" that began with the pre-registration software.[16]

Nimmer suggests that a plaintiff might be able to recover statutory damages if a "qualitative new infringement occurs after registration" along with "a large lapse of time between the first bout of infringement and its post-registration successor."[17] But no case has been found that has adopted this view.

## One Award for Multiple Infringements Against Multiple Infringers Who Act in Concert

Another misconception concerns the number of awards of statutory damages to which a copyright

---

[202 F. Supp. 2d 290, 298, 63 USPQ2d 1094 (S.D.N.Y. 2002) (64 PTCJ 155, 6/14/02) ("Each subsequent appearance [of plaintiff's photograph after its registration] was part of the continuous, ongoing advertising campaign. Because the effective date of the alleged infringement commenced before the effective date of his registration, Fournier is not entitled to statutory damages.").

[5] See *Walt Disney Co. v. Powell*, 897 F.2d 565, 569, 14 USPQ2d 1160 (D.C. Cir. 1980) (39 PTCJ 393, 3/15/90) ("Both the text of the Copyright Act and its legislative history make clear that statutory damages are to be calculated according to the number of works infringed, not the number of infringements.").

[6] See *WB Music Corp. v. RTV Communication Group Inc.*, 2004 WL 964247 (S.D.N.Y. 2004), rev'd, 445 F.3d 538, 78 USPQ2d 1637 (2d Cir. 2006) (71 PTCJ 722, 4/28/06), where the district court awarded statutory damages based on the number of defendant-created compilations.

[7] See footnote 3.

[8] 17 U.S.C. § 412 (2) sets forth the exception, which applies to published works only. The exception permits an award of statutory damages for a post-infringement registration of a published work if the work is registered within three months of its first publication.

[9] See cases cited in footnote 4; see also *Johnson v. University of Virginia*, 606 F. Supp. 321, 324-25, 226 USPQ 356 (W.D. Va. 1985) ("[T]he alleged post-registration infringements involve only photographs which were first used by defendants prior to registration. Consequently, those alleged post-registration infringements 'commenced' prior to registration, and thus pursuant to § 412 they provide no basis for allowing statutory damages.").

[10] See *Dyer v. Napier*, 79 USPQ2d 1794 (D. Ariz. Mar. 16, 2006) (71 PTCJ 594, 3/31/06). See also *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158, 82 USPQ2d 1464 (2d Cir. 2007) (73 PTCJ 730, 4/20/07) ("[A] plaintiff may not recover statutory damages and attorney's fees for infringement occurring after registration if that infringement is part of an ongoing series of infringing acts and the first act occurred before registration.").

[11] 967 F.2d 135, 23 USPQ2d 1676 (5th Cir. 1992) (44 PTCJ 319, 8/6/92). Cases following *Mason*'s bright-line rule include *Derek Andrew Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 701, 87 USPQ2d 1044 (9th Cir. 2008) (76 PTCJ 273, 6/20/08); *Bouchat v. Bon-Ton Department Stores Inc.*, 506 F.3d 315, 330, 84 USPQ2d 1289 (4th Cir. 2007) (75 PTCJ 18, 11/2/07); and *Qualey v. Caring Center of Slidell*, 942 F. Supp. 1074, 1076-77 (E.D. La. 1996).

[12] 967 F.2d at 144.

[13] *Id.* at 143 (emphasis in original).

[14] *Id.* at 144.

[15] 2004 U.S. Dist. LEXIS 26143, * 71, 73 USPQ2d 1954 (S.D.N.Y. Jan. 3, 2005) (69 PTCJ 319, 2/4/05).

[16] 609 F. Supp. 1325, 1331, 225 USPQ 156 (E.D. Pa. 1985).

[17] Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 7.16[C][1] at 7-181 (2008).

concern. But Section 504(c)(1) of the act limits a copyright owner to one grant of statutory damages in that circumstance.

The section provides that a copyright owner "may elect ... to recover ... *an award* of statutory damages for all infringements involved in the action with respect to any one work.... for which any one infringer is liable individually or for which any two or more infringers are liable jointly or severally" (emphasis added).

The copyright owner is restricted to one award of statutory damages regardless of the number of acts of infringement, whether they are separate, isolated or occurring over many years.[19] As Goldstein aptly states, "an infringer will be liable for a single statutory award whether it makes one copy of a copyrighted painting or one thousand and whether it performs the copyrighted work once or nightly over a period of months."[20]

The copyright owner remains restricted to one award of statutory damages against multiple infringers where they act in concert and are therefore jointly and severally liable.[21] Section 504(c)(1) relies on the common law to define joint or several liability. Those principles do not depend on whether defendants engaged in the same act or exhibited the same level of willfulness.[22] The act "is unconcerned about gradations of blameworthiness."[23]

Confusion also surrounds the limitation on the number of statutory damages awards that may be assessed for infringement of a compilation or a derivative work. The limitation is contained in the last sentence of Section 504(c)(1), which provides that "all the parts of a compilation or derivative work constitute one work."[24]

The confusion arises from the "facial" ambiguity in this limitation.[25] It is unclear whether the phrase "compilation or derivative work" refers to the copyrighted work that the plaintiff creates, which is then infringed, or the infringing work defendant creates from multiple, separately copyrightable works of plaintiff.

Most courts assume, without extensive discussion, that the one-work limitation refers to a plaintiff-created compilation or derivative work.[26] Thus, where record labels made CDs containing multiple copyrighted songs that defendant infringed, courts awarded the labels one grant of statutory damages.[27] Where defendant infringed a plaintiff-crafted compilation of clip-art images, a court reached the same conclusion.[28] Similarly, where defendant copied 122 photographs from a catalogue that plaintiff put together, plaintiff was limited to one grant of statutory damages.[29]

But in *Greenberg v. National Geographic Society*, the district court found that the "compilation" referenced in Section 504(c)(1) was the infringing work defendant created from multiple, separately copyrightable works of plaintiff. There, defendant took 64 of plaintiff's copyrighted photographs and published them in four magazine compilations defendant created. The court nevertheless limited Greenberg to only four awards of statutory damages.[30]

*WB Music* has now resolved the ambiguity, at least in the Second Circuit. The court found that the phrase "compilation or derivative work" in the last sentence of Section 504(c)(1) refers to a work created by plaintiff.[31] Thus, the court held that the one-work limitation is inapplicable if the defendant creates the infringing com-

---

[18] Sometimes courts make the same mistake. See *Antenna Television A.E. v. Aegean Video Inc.*, 1996 WL 298252, * 11 (E.D.N.Y. 1996) ("Since the prevailing plaintiff is entitled to a separate statutory damage award for each infringement committed by the Defendants, the court must determine the total number of infringements and their distribution between the parties.").

[19] H.R. Rep. No. 94-1476 at 162 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5778, states "[a] single infringer of a single work is liable for a single amount ... no matter how many acts of infringement are involved in the action and regardless of whether the acts were separate, isolated, or occurred in a related series."

[20] Paul Goldstein, *Goldstein on Copyright* § 14.2.2.2 at 14:63 (2009). It makes no difference that a defendant infringes two separate rights of the copyright owner such as the right to reproduce and the right to distribute. The copyright owner is still entitled to one grant of statutory damage because only one work has been infringed. *Id.*

[21] *See, e.g., Smith v. NBC Universal*, 86 USPQ2d 1579 (S.D.N.Y. February 28, 2008).

[22] See *Fitzgerald Publishing Co. v. Baylor Publishing Co.*, 807 F.2d 1110, 1117, 1 USPQ2d 1261 (2d Cir. 1986) (33 PTCJ 230, 1/15/86) ("Consideration of these factors in setting the statutory damage award sometimes results—on account of their several and joint liability—in a less culpable defendant being held liable in an amount greater than otherwise would be the case had it appeared in the action alone. This possibility is not a fatal obstacle. ... [T]he relative faults of the defendants are irrelevant.").

[23] *Id.* On remand in that case, the district court awarded statutory damages jointly and severally against two willful defendants even though one had victimized the other. See 670 F. Supp. 1133 (S.D.N.Y. 1987), *aff'd mem.*, 862 F.2d 304 (2d Cir. 1988).

[24] The Copyright Act, 17 U.S.C. § 101, defines a compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term 'compilation' includes collective works." That section also defines a collective work to include one "in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole."

[25] *WB Music*, 445 F.3d at 540.

[26] See, e.g., *Eastern American Trio Products Inc. v. Tang Electronic Corp.*, 97 F. Supp. 2d 395, 419, 54 USPQ2d 1776 (S.D.N.Y. 2000) (60 PTCJ 55, 5/19/00).

[27] See, e.g., *UMG Recordings Inc. v. MP3.com Inc.*, 109 F. Supp. 2d 223, 56 USPQ2d 1376 (S.D.N.Y. 2000); *Country Roads Music Inc. v. MP3.com Inc.*, 279 F. Supp. 2d 325 (S.D.N.Y. 2003).

[28] *Xoom Inc. v. Imageline Inc.*, 323 F.3d 279, 66 USPQ2d 1210 (4th Cir. 2003) (65 PTCJ 510, 4/4/03).

[29] *Stokes Seeds Ltd. v. Geo. W. Park Seed Co.*, 783 F. Supp. 104, 107, 21 USPQ2d 1934 (W.D.N.Y. 1991).

[30] 2003 WL 25841579 (S.D. Fla. Feb. 18, 2003).

[31] *WB Music*, 445 F.3d at 540-41.

19

## II. SECTION 411(a) IS A MANDATORY PREREQUISITE TO SUIT THAT ORDINARILY SHOULD BE RAISED *SUA SPONTE* BY DISTRICT COURTS

Non-jurisdictional statutory threshold requirements are applied with varying degrees of rigorousness. Depending on the nature and purposes of the requirement at issue, such provisions may (or may not) be subject to waiver, forfeiture, equitable exceptions, *sua sponte* enforcement, or a combination thereof. See, *e.g.*, *Hallstrom*, 493 U.S. at 23; *Zipes*, 455 U.S. at 393; *Day*, 547 U.S. at 205, 209. Thus, Section 411(a)'s non-jurisdictional character does not by itself resolve the question whether an infringement suit should be dismissed for non-compliance with the registration requirement even when the defendant does not seek dismissal on that basis.[10]

In determining whether a particular rule is subject to equitable exceptions or may be raised by the court on its own motion, a key consideration is whether the rule is intended to benefit only the parties to the suit, or whe-

---

These "drive-by jurisdictional rulings," see *Arbaugh*, 546 U.S. at 511 (quoting *Steel Co.* v. *Citizens for a Better Env't*, 523 U.S. 83, 91 (1998)), should be given little weight because they predate *Arbaugh* and did not apply the analytic approach that this Court articulated in that case.

[10] Federal Rule of Criminal Procedure 52(b) and this Court's decisions construing the Rule illustrate that district courts are sometimes required to address *sua sponte* issues that the parties have not identified. Rule 52(b) states that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." The very concept of an "error" that "was not brought to the court's attention" presupposes that the trial court may sometimes be obligated to issue a legal ruling that neither party requests. See *United States* v. *Olano*, 507 U.S. 725, 733 (1993) ("Although in theory it could be argued that if the question was not presented to the trial court no error was committed by the trial court, * * * this is not the theory that Rule 52(b) adopts.") (brackets and citation omitted).

ther it serves broader systemic interests that the parties might not adequately represent. See, *e.g.*, *Hallstrom*, 493 U.S. at 24-26, 28-29; *Day*, 547 U.S. at 205, 209; cf. *Arizona* v. *California*, 530 U.S. 392, 412 (2000). Section 411(a)'s registration requirement falls in the latter category. By making the right to sue for copyright infringement contingent on registration, Congress sought to expand the Library of Congress's collection of copyrighted works, provide a public record of copyright ownership, and afford courts the benefit of the Copyright Office's expertise. In light of those considerations, district courts should strictly enforce the registration requirement in cases where the defendants raise the issue. Further, courts should ordinarily dismiss *sua sponte* infringement suits premised on unregistered copyrights, even when the defendant does not assert the plaintiff's non-compliance with Section 411(a) as a ground for dismissal. After judgment, however, defenses based on Section 411(a) should be considered forfeited, except in exceptional circumstances that are not present here.

### A. Section 411(a) Is A Mandatory Prerequisite To Suit That Should Be Strictly Enforced When Raised By A Party

1. In *Hallstrom*, this Court recognized that a statutory prerequisite may be a "mandatory condition[] precedent to commencing suit" even if it is not jurisdictional.[11] 493 U.S. at 23, 26, 31. There, the Court considered the notice-and-delay provision of the Resource Conservation and Recovery Act of 1976 (RCRA), which applied to citizen suits against private parties for violating

---

[11] The Court in *Hallstrom* left open the question of whether the relevant provision was "jurisdictional in the strict sense of the term," because resolving that question was not necessary to the Court's conclusion that the provision was mandatory. 493 U.S. at 31.

RCRA, and stated that "[n]o action may be commenced * * * prior to 60 days after the plaintiff has given notice" to, *inter alia*, the Administrator of the Environmental Protection Agency. 42 U.S.C. 6972(b)(1). The Court explained that, "[u]nder a literal reading of the statute, compliance with the 60-day notice provision is a mandatory, not optional, condition precedent for suit." *Hallstrom*, 493 U.S. at 26. The Court also observed that permitting equitable exceptions to the notice requirement could "frustrate[]" Congress's intent to allow government agencies the opportunity to enforce RCRA themselves upon learning of the allegations, and also to promote judicial economy by providing a window for voluntary compliance. *Id.* at 28-29; see *Brockamp*, 519 U.S. at 350-352 (time limit for filing tax recovery claim was mandatory in view of its "emphatic" language and furtherance of system-related interests); cf. *Munsell* v. *Department of Agric.*, 509 F.3d 572, 581 (D.C. Cir. 2007) (exhaustion requirement in 7 U.S.C. 6912(e) is "both mandatory and nonjurisdictional").

  2. Section 411(a) similarly speaks in emphatic and facially unqualified terms: "*no action* for infringement * * * *shall be instituted until* preregistration or registration of the copyright claim has been made," (emphasis added). This language is most naturally read as creating a mandatory condition precedent to suit. See *Hallstrom*, 493 U.S. at 26, 31. That conclusion is reinforced by Section 501(b), which states that the "owner of an exclusive right under a copyright is entitled, *subject to the requirements of section 411*, to institute an action for any infringement." 17 U.S.C. 501(b) (emphasis added). That language confirms that the preconditions to suit set forth in Section 411(a), among which is registration of the copyright that is alleged to have been in-

fringed, are "requirements" upon which the right to sue depends.[12]

3. Like the notice requirement in *Hallstrom*, Section 411(a)'s registration requirement serves important purposes beyond protecting the interests of the parties in an individual suit. See H.R. Rep. No. 7083, 59th Cong., 2d Sess. 8 (1907) (registration requirement in the 1909 Copyright Act was enacted "[f]or the protection of the public itself"). The requirement encourages authors to deposit their creative works with the Copyright Office, thereby providing the Library of Congress with an important source of its acquisitions. See H.R. Rep. No. 609, *supra*, at 42 (emphasizing importance of this cost-free method of acquisition); *Copyright Report* 13 ("Copyright deposits form the core of the Library's 'Americana' collections and serve as the primary record of American creativity."). In addition, registration enables the Copyright Office to compile a record of copyrighted works, which serves as a valuable resource for those seeking to use copyrighted works lawfully. See *id.* at 12.

---

[12] The Copyright Act's preregistration procedures demonstrate the high priority that Congress placed on registration. 17 U.S.C. 411(a); 408(f). The preregistration procedure was added to the Copyright Act in response to the increasing prevalence of pre-publication infringement, which cannot easily be remedied if the copyright owner must wait to obtain registration before suing for infringement. See H.R. Rep. No. 33, 109th Cong., 1st Sess. Pt. I, at 4-5 (2005). Although Section 411(a) permits a copyright owner to sue if she has preregistered her works, in order to "ensure that preregistered works are formally registered," *id.* at 5, Congress provided that failure to timely register renders the preregistration ineffective, and can mandate the dismissal of the suit. 17 U.S.C. 408(f)(4); see note 4, *supra*. These limitations reflect Congress's intent to permit suits prior to registration only in specific circumstances, and on the condition that the works are ultimately registered.

23

The registration requirement also ensures that the court in an infringement suit can consider the Copyright Office's judgment as to the copyrightability of the work. See, e.g., H.R. Rep. No. 609, supra, at 41 ("Registration * * * assists the courts in resolving the underlying copyright dispute."); id. at 41-42 (Judicial Conference of the United States stated that elimination of registration requirement would cause "increased difficulty in trying copyright cases."); Torres-Negrón v. J&N Records, LLC, 504 F.3d 151, 161-162 (1st Cir. 2007). When registration is made within five years of the work's first publication, the certificate is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. 410(c). Section 411 also contemplates active participation by the Copyright Office in certain infringement suits following its registration decision, either when the plaintiff files suit after his registration application has been denied, see 17 U.S.C. 411(a), or when the Copyright Office grants the application but the defendant subsequently alleges that the putative copyright owner's certificate contains intentionally inaccurate information, see Prioritizing Resources and Organization for Intellectual Property Act of 2008, Pub. L. No. 110-403, § 101(a)(5), 122 Stat. 4257. In addition, the registration requirement may sometimes obviate the need for the court to rule on infringement claims at all, since a potential plaintiff whose registration application is denied by the Copyright Office may forgo suit rather than challenge the Register's determination.

Although the lower courts are divided regarding the deference due the Register's registration decisions,[13]

---

[13] A majority of courts of appeals to consider the issue defer to the Copyright Office's opinion on registrability in the context of an infringe-

24

Congress evidently intended the Register's expertise to serve as a resource to courts adjudicating copyright claims and contemplated an active role for the Register in certain infringement suits. The Register cannot perform those functions when copyright owners do not present their works for registration. Thus, in light of Section 411(a)'s mandatory language and the broad systemic purposes that the registration requirement serves, district courts should enforce that requirement rigorously when it is invoked by a party.[14]

---

ment action. See *Torres-Negrón*, 504 F.3d at 161-162; *Southco, Inc.* v. *Kanebridge Corp.*, 390 F.3d 276, 286 (3d Cir. 2004) (en banc), cert. denied, 546 U.S. 813 (2005); *Batjac Prods. Inc.* v. *GoodTimes Home Video Corp.*, 160 F.3d 1223, 1230-1231 (9th Cir. 1998), cert. denied, 526 U.S. 1158 (1999); *John Muller & Co.* v. *New York Arrows Soccer Team, Inc.*, 802 F.2d 989, 990 (8th Cir. 1986); *Norris Indus., Inc.* v. *International Tel. & Tel. Corp.*, 696 F.2d 918, 922 (11th Cir. 1982), cert. denied, 464 U.S. 818 (1983). But see *Carol Barnhart Inc.* v. *Economy Cover Corp.*, 773 F.2d 411, 413-414 (2d Cir. 1985); *Atari Games Corp.* v. *Oman*, 888 F.2d 878, 887 (D.C. Cir. 1989) (Silberman, J., concurring); *Wright* v. *Warner Books, Inc.*, 953 F.2d 731, 742 (2d Cir. 1991).

[14] Section 411(a) requires the plaintiff to possess a registration certificate, to have been refused registration, or to have preregistered, at the time the suit is commenced. Although some courts have held that Section 411(a)'s precondition to suit is satisfied by simply filing an application for registration, see, *e.g.*, *Apple Barrel Prods., Inc.* v. *Beard*, 730 F.2d 384, 386-387 (5th Cir. 1984), those decisions are contrary to Section 411(a)'s plain text, and therefore incorrect. Section 411(a) unambiguously states that registration must have been "made in accordance with this title"—*i.e.*, granted by the Copyright Office—before a suit may be filed. See, *e.g.*, *La Resolana Architects, PA* v. *Clay Realtors Angel Fire*, 416 F.3d 1195, 1203-1205 (10th Cir. 2005). And although Section 411(a) allows the putative copyright owner to sue even if his registration application is denied, the statute clearly contemplates that the plaintiff will commence the suit only after the Copyright Office has acted on the application. See 17 U.S.C. 411(a) (providing that, where a properly submitted registration application "has been refused, the ap-