UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

LIBERTY MEDIA HOLDINGS, LLC,

Plaintiff

v.

RYAN FRAGA,                                              Civil Action No. 11-cv-11789-FDS

Defendant

## DEFENDANTS REPLY TO PLAINTIFFS OPPOSITION TO MOTION TO DISMISS AND DEFENDANTS MOTION FOR SANCTIONS

Defendant, Ryan Fraga, respectfully files this response on his own behalf as he has been unable to reach his attorney who failed to file this response within the time that Judge Young had ordered. Defendant respectfully requests that the court allow the late filing of this response. A motion to proceed pro se is being filed simultaneously with this motion.

### LEGISLATIVE HISTORY AND REGISTRATION REQUIREMENTS

The legislative history of the Copyright Act of 1976 establishes that the creation of a public record of copyrights, which would require the actual names of the registrants and titles of works, was one of Congress's express goals. See H.R. Rep. 94-1476, 1976 U.S.C.C.A.N. 5659, 5771-72 ("[T]he various clauses of section 409, which specify the information to be included in

an application for copyright registration, are intended to give the Register of Copyrights authority to elicit all of the information needed to examine the application and to make a meaningful record of registration.")

This goal was reiterated during a debate on the possible repeal of sections 411 and 412 In the 1980s, when Congressman Kastenmeier stated the case for the registration incentive system:

> The objective of maintaining the flow of materials to the collections of the National Library through registration, the evidentiary use to the judicial system, the usefulness of the examining process, and the public interest of a comprehensive and open registry relating to the existence, ownership and exercise of copyrights all argue for continuation of this registration incentive. The Berne Convention: Hearings on S. 1301 and S. 1971 Before the Subcommittee. on Patents, Copyrights & Trademarks of the S. Comm. on the Judiciary, 100th Cong. 55 (1988) (statement of Congressman Robert W. Kastenmeier) (emphasis added).

A September 1993 study by the Advisory Committee on Copyright Registration "ACCORD" of the Library of Congress regarding the possible repeal of sections 411 and 412 of the Copyright act listed various arguments both for and against repeal. Highlighting arguments for retention of Section 412, the report stated:

> b) Section 412 is fulfilling the purpose for which it was intended as a powerful working inducement to registration and deposit, which are in large part responsible

for the Library's collections and copyright databases. It has proven its reasonableness and legitimacy as part of the American copyright system.

d) The acts of 1976 and 1988 have transformed the American copyright system into one virtually free of formalities, with the result that the number of works now protected by statutory copyright is virtually incalculable. However, without notice and registration, it is difficult if not impossible for publishers, historians, biographers, journalists, and other authors and users to determine basic copyright facts about a work. The function of section 412 in our copyright system has thus achieved a new dimension. By inducing registration it provides scholarly users and other authors and publishers with essential information not otherwise available; and, by withholding statutory damages and attorney's fees for unregistered works, it shields these users from some of the risks of litigation.

The Copyright Office recognizes and embraces Congress's intent that the Office create and maintain an accurate record:

> The copyright law requires the Register of Copyrights to create, maintain, and index records of all deposits, registrations, recordations, and other copyright related matters and to make these records available to the public.
> U.S. Copyright Office, Annual Report of the Register of Copyrights, available online at http://www.copyright.gov/reports/annual/2007/ar2007.pdf).

The Copyright Office maintains an online database at http://cocatalog.loc.gov/ for post-1977 registrations, searchable by title and/or name (of author). The Copyright Office requires Motion Pictures to be filed using Copyright Form PA.(Exhibit A) The first page contains basic information, followed by line by line instructions for filling out the application.

The first section states the following:

**Space 1: Title**

**Title of This Work: Every work submitted for copyright registration must be given a title to identify that particular work. If the copies or phonorecords of the work bear a title (or an identifying phrase that could serve as a title), transcribe that wording *completely* and *exactly* on the application. Indexing of the registration and future identification of the work will depend on the information you give here.(italics appear in original)**

This is not a new requirement. Defendant was able to find a copy of the Copyright Office's "Rules and Regulations for the Registration of Claims to Copyright" dating back to 1921 which states:

> "Care should be taken that the title of the work, the name of the author, and the name of the copyright claimant should be correctly stated in the application, and that they should agree exactly with the same statements made in the work itself."
> (Exhibit B)

Section 605 of the "Compendium II: Copyright Office Practices" explicitly states that Title variances are "not immaterial" and need to be corrected prior to registration. It notes that

something as minor as the application stating that the Title is "No Nuclear Rearmament" when the actual Title is "On Nuclear Rearmament" requires the application to be corrected for purposes of registration.

17 U.S.C. 408 states that "the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee specified by sections 409 and 708. "The application for copyright registration shall be made on a form prescribed by the Register of Copyrights"(17 U.S.C. 409). Section 409(6) unequivocally requires registrants to set forth the exact title of the work being registered, as well as any other titles by which it may be identified.

37 C.F.R. 202.3(c)(2) states "An application for copyright registration shall be submitted on the appropriate form prescribed by the Register of Copyrights under paragraph (b) of this section, and shall be accompanied by the appropriate filing fee, as required in § 201.3(c), and the deposit required under 17 U.S.C. 408 and § 202.20 of these regulations. The application **shall contain the information required by the form and its accompanying instructions**, and shall include a certification." (emphasis added)

Plaintiff's arguments fail for a simple reason. As noted in Defendants Motion to Dismiss and reply motion filed months ago and which are respectfully incorporated herein(Docket entry 14 and 19), the actual Title of this work is "Down on The Farm"(see Exhibit C- DVD Box, Exhibit D- 2257 screenshot from Film submitted by Plaintiff in California case 11-cv-00651-IEG, Liberty Media Holdings v. Tabora, and Exhibit E- Opening frame of preview video located on www.shopcorbinfisher.com). The film has only been sold and marketed using the Title "Down on the Farm." In fact, that is the Title used in the complaint itself. The copyright registration lists the Title "Corbin Fisher Amateur College Men Down on the Farm." There is no alternate Title on

registration.

The motion picture in question cannot be found by doing a basic Title search of "Down on the Farm" despite that being the only title listed on the DVD itself. The Copyright Search website instructs users who are searching by Title to "Type the entire title, or the first few words of the title, starting with the first word." Since the registration adds five words to the beginning of the Title which don't actually appear on the work itself, it is impossible to find the registration. An author/name search for the pseudonym "Corbin Fisher" yields no results. Using any title other than "Down on the Farm" would run afoul of the purpose of Section 412 and the express requirement of Section 409(6). Congress' intent was to induce registration of copyrights to make a comprehensive record that could be easily searched by the public. Indeed, the 9th Circuit pointed out that the "central purpose of registration" is to compile "a robust national register of existing copyrights." Cosmetic Ideas, Inc. v. IAC/InteractiveCorp (9th Cir. Cal., 2010) "Failure to comply with statutorily mandated application procedures will invalidate the registration." (Fernando Torres-Negron v J & N Records, LLC, 504 F.3d 151 (1st Cir. 2007) "Where the registration was approved because the Copyright Office believed that it had accurate information, but the information contained in the application was, in reality, untrue, the plaintiff was put in a position legally equivalent to someone who had never submitted a complete application for copyright registration.(Torres-Negron citing Whimsicality, Inc. v. Rubie's Costume Co., 891 F.2d 452, 456 (2d Cir. 1989))

Because the "Copyright Act . . . requires copyright holders to register their works before suing for copyright infringement,"( *Reed Elsevier, Inc. v. Muchnick*. 130 S.Ct. 1237, 1241 (2010)  and "Down on the Farm"(the actual Title of the work) is not registered, Plaintiff is unable to state a claim for infringement of that work and this lawsuit must be dismissed with prejudice.

## REQUEST FOR SANCTIONS

Plaintiff holds well over a thousand copyrights, and it appears that most of them are for Titles that don't exist. For example, Copyright Registration PA0001610794 is for the Title "Corbin Fisher's Amateur College Men Presents Dylan" published 10/6/08. A review of the Corbin Fisher website www.corbinfisher.com shows a separate Title "Dylan" published on the same date. Another example is Registration PA0001716529 for the Title "Corbin Fisher Amateur College Sex Preston & Austin's Bi Tag Team" published on 12/24/10. On that same date, a movie Titled "Preston & Austin's Bi Tag Team" was published on www.corbinfisher.com. These registrations, among over 100 others, have been the subject of infringement actions filed by Liberty Media Holdings. This practice of adding several words to the actual Title of motion pictures appears to be standard practice for Liberty Media Holdings. These are not inadvertent errors. Corbin Fisher employs in house counsel who specializes in Copyright Law. They also have an employee that specifically handles the Copyright Registrations.(Exhibit F) This carelessness and defiance of the Copyright Office's clear instructions and the requirement of Section 411 of the Copyright Act are inexcusable and warrant sanctions.

Pursuant to 37 C.F.R. 201.7(3)(c)(4)(v), the registration is subject to cancellation because the "application and copy(s) or phonorecord(s) do not match each other." The copyrightability of a work doesn't foreclose the Copyright Office from cancelling a registration. The office will cancel a registration for something as simple as a check being returned for insufficient funds, and will do so immediately and then inform the copyright holder after the fact and instruct them to return the copyright certificate. 37 C.F.R. 201.7(c)(2) . Since the registration is for a Title that does not exist, Defendant respectfully requests that this honorable court cancel the registration

for "Corbin Fisher Amateur College Men Down on the Farm." Plaintiff continues to sue defendants across the country using this invalid registration.(and given that this has prompted well over six figures in default judgments and settlements for Plaintiff, there is nothing else stopping them from continuing to pursue these defendants).

Defendant also respectfully requests monetary sanctions against Liberty Media Holdings for continuing to pursue this case knowing full well that the Title on the registration and the motion picture itself do not match. Plaintiff has been aware of the fact that they hold no Copyright Registration for the motion picture in question since the beginning of 2012 when Defendant filed his first Motion to Dismiss. In fact, Judge Kaplan of the Southern District of New York ruled on July 9, 2012 that "the registration relied upon, at least on its face, is not for the motion picture that is the subject of the alleged infringement."( Liberty Media Holdings, LLC v. Tabora & Whetstone, S.D.N.Y.; July 9, 2012). Plaintiff continues to sue defendants across the country despite being aware of this discrepancy. Plaintiff has made every effort to destroy Defendant's name by bringing this lawsuit in bad faith by claiming that Defendant admitted to downloading the film in question, which in reality was never said. This lawsuit is on the first page of results when searching Defendant's name via Google.

Defendant reserves the right to seek attorney's fees and costs up to this date if the court rules in his favor.

## CONCLUSION

Defendant respectfully requests that this honorable Court dismiss this action with prejudice and grant Defendant's motion for sanctions against Plaintiff.

Respectfully Submitted,

Ryan Fraga